| | |
|---|---|
| **ROBINSON BROG LEINWAND GREENE** <br>   **GENOVESE & GLUCK P.C.** <br> 875 Third Avenue <br> New York, New York 10022 <br> Steven B. Eichel <br> Robert M. Sasloff <br> *Attorneys for the Debtor and Debtor in Possession* | **Hearing Date and Time:** <br> September 29, 2021 at 10:00 a.m. |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

| | |
|---|---|
| In re: <br><br> **6525 BELCREST ROAD, LLC,** <br><br>                 Debtor. | Chapter 11 <br><br> Case No: 21-10968-mew |

-----------------------------------------------------------X

### MOTION FOR AN ORDER REJECTING GROUND LEASE
### AND OTHER ANCILLARY AGREEMENTS WITH RESPECT THERETO

TO THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:

      **6525 Belcrest Road, LLC,** the debtor and debtor in possession herein (the "Debtor") by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.,** seeks the entry of an order rejecting the ground lease made as of March 31, 1998 (as amended and hereinafter, the "Ground Lease"), with Dewey L.C. ("Dewey") as well as any other agreements ancillary to the Ground Lease, including (1) the Parking Facility Management Agreement made as of July 1, 2011 (the "Parking Agreement") with Atlantic Services Group, Inc. ("Atlantic"), and (2) the sublease for the use of a portion of the Ground Lease premises made as of July 18, 2014 (the "Student Parking Agreement") with MLCFC 2007-8 Belcrest Road, LLC, ("MLCFC") (collectively the Ground Lease, the Parking Agreement, and the Student Parking Agreement shall hereinafter be referred to as the "Contracts"), effective as of October 1, 2021. In support thereof, the Debtor states:

{01116459.DOC;3 }

## JURISDICTION AND VENUE

1. Jurisdiction over this application is vested in the United States District Court for this District pursuant to Sections 1334 of Title 28 of the United States Code (the "Judicial Code").

2. This is a core proceeding arising under title 11 of the United States Code. See 28 U.S.C. §§157(b)(1) and 157(b)(2)(A) and (O). The statutory predicates for the relief sought herein are section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

3. Venue of this motion in this district is proper pursuant to section 1409 of the Judicial Code.

## BACKGROUND

4. In 2015, the Debtor purchased a valuable, improved parcel of commercial real property known as 6525 Belcrest Road, Hyattsville, Maryland (the "Property"), along with the assumption of all contracts, permits, approvals, etc. which included certain rights under a 1970 parking waiver ("Parking Waiver"), which rights included approved detailed site plans along with issued permits and certificate of occupancy issued from the approval of the work done under those permits. Since the Debtor's Property was built on the majority of the plot, it was approved by merging its plot with the plot across the street where the parking was to be provided. When the Debtor purchased the Property, it also had to take assignment of various other agreements that had been entered into by the Debtor's predecessors in interest that related directly to the operation of the building. The assignment of agreements included the Contracts, and more specifically it included an separate assignment of the Ground Lease which had been created some 28 years later for a portion of the plot(8 acres instead of the

original 19.98 acres.[1]

5. The Debtor leases the Property to a number of commercial tenants. The Debtor has asserted that the Parking Waiver allowed it and has allowed its tenants to park on approximately 19.9639 acres of real property across the street on the opposite side of Toledo Road, which is owned by Dewey and BE UTC Dewey Parcel LLC ("Parking Parcel").

6. The Debtor is also the ground lessee under the Ground Lease by and between Dewey and a prior owner of the Property entered into in 1998 and for only 8 acres. The Ground Lease property is located across the street from the Debtor's Property. Similarly, the Debtor is also party to the Parking Agreement and the Student Parking Agreement entered into with Atlantic and MLCFC respectively and prior owners of the Property. Copies of the Contracts are annexed hereto as Exhibit's "A", "B", and "C", respectively.

7. Prior to the bankruptcy filing, the property right disputes between the parties habe been the subject of three separate proceedings: (i) a state court action commenced on April 14, 2020, by Debtor, entitled *6525 Belcrest Road, LLC. v. Dewey L.C. et al.*, No. CAE20-11589, pending in the Circuit Court for Prince George's County, Maryland (the "Maryland Declaratory Judgment Action"), seeking a declaration of its rights on the Parking Parcel; (ii) an administrative appeal of Dewey's detailed site plan; and (iii) an arbitration to determine Dewey's right to make a parking substitution under the Ground Lease, which resulted in an arbitration award that Dewey could relocate the Debtor's parking off the Parking Parcel.

8. On May 19, 2021 (the "Petition Date"), the Debtor filed a petition for relief under the protective provisions of Chapter 11 of Title 11 of the United States Code. The Debtor has continued to operate its business and manage its assets since the filing of the petition as a debtor

---

[1] The original waiver granted was for the full 19.98 acres and for an indefinite period while the Ground Lease was for 8 acres and originally for a 27 year duration.

in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

9. As a result of a ruling by the arbitrator in the arbitration and the actions of Dewey and Atlantic in closing the parking lot on the Parking Parcel before the award could be confirmed, the Debtor and its tenants would no longer be able to have access to and park on the Parking Parcel, it was unclear whether the Debtor and its tenants would be permanently prevented from parking on the Parking Parcel unless those actions were stayed by the filing of a bankruptcy case and reversed. As of now, the action in the circuit court (the State Court system), in Maryland is still proceeding with Dewey seeking to confirm the arbitration award, to which the Debtor has objected to on various grounds. It had been the Debtor's belief when it filed this case that unless and until the award was confirmed, Dewey could not close the Parking Parcel. Since this Court denied that relief, the Debtor submits that continuing to pay a premium for future benefits of access to the Parking Parcel has diminished the benefit the Ground Lease may have provided. That coupled with the Debtor's ability to reevaluate the expensive Ground Lease and whether it should be assumed or rejected, and the Debtor incurring significant legal costs in pursuing the litigations, resulted in the Debtor determining that it would need to file a Chapter 11 case and seek injunctive relief to prevent the interference of what it believed was its right to use the Parking Parcel pursuant to the Parking Waiver.

10. Soon after the Debtor's filing, the Debtor commenced an adversary proceeding and filed a motion for a temporary restraining order and injunctive relief to, among other things, stay Dewey and the other defendants in the adversary proceeding from exercising control over the Debtor's property rights and enjoin them from commencing any further construction on the Parking Parcel. The Court denied the Debtor's motion for a temporary restraining order and injunctive relief and granted the cross-motion of Dewey and Bald Eagle Partners, LLC ("Bald Eagle") for relief from the automatic stay to allow them to (i) exercise their rights and remedies

under the Ground Lease with respect to the substitute parking under the Ground Lease and commence or continue any action or proceeding with respect to the Property. The Debtor is challenging the motion to confirm the arbitration award, is asking that it be vacated and as such, there is no final order authorizing the Closing of the Parking Parcel. As the Debtor has not determined whether it will proceed with its adversary proceeding in this Court, it has, subject to court approval, given several extensions to the defendants in the adversary proceeding to the end of September[2] to answer, move, or otherwise respond to the complaint to avoid either side expending unnecessary time and money in the event the Debtor ultimately decides to voluntarily dismiss the adversary proceeding.

11. As the Debtor's motion for injunctive relief was denied, it has also had to reevaluate its initial position and has been considering and exploring its options, including (i) settling its dispute with Dewey, (ii) renegotiating the terms of the Ground Lease, or (iii) rejecting the Ground Lease. Since the Court granted stay relief, the Debtor has been coordinating its efforts with its property manager to (i) explore new parking arrangements, (ii) determine the availability of and current markets rates for parking in the area, and (iii) communicate with the Debtor's tenants effected by the change of parking to discuss potentially re-negotiating their leases or reaching accommodations with respect thereto.

12. At this time the Debtor believes that rejecting the Ground Lease is in the best interest of the Debtor and its estate. The Debtor believes that the Ground Lease and therefore the other Contracts which are ancillary to it do not serve the interests of the Debtor's tenants anymore and no longer supports the Debtor's business. The Debtor bases this decision on a few factors: (1) it has made alternative arrangements with Atlantic in Garage A, a facility Atlantic manages for a different owner for sufficient parking spaces to cover its current needs, (2) it has

---

[2] Debtor will be giving further extensions till the end of November.

negotiated with its tenants either lease amendments or accommodations that alleviates the need to reserve parking and (3) current zoning requirements have either eliminated and/or significantly reduced the Debtor's obligations to provide parking. Additionally, and more precisely, the economics of the Ground Lease in combination with these factors and the present costs of the rent paid under the Ground Lease support the rejection of the Ground Lease. Since the Ground Lease is being rejected, the Parking Agreement for the management of the Ground Lease should also be rejected as well as the Student Parking Agreement since it only exists as a function of the Ground Lease. Although the Debtor will lose income from the rejection of the Contracts, the loss is substantially less than the rent paid under the Ground Lease and the Debtor submits that it will see a net gain with respect thereto. Debtor also submits that the rejection of the Ground Lease will not adversely affect its claims regarding the Parking Parcel.

## RELIEF REQUESTED

13. Pursuant to this motion, the Debtor is seeking to reject the Contracts pursuant to section 365 of the Bankruptcy Code.

## BASIS FOR RELIEF

14. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows the trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar, Co v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996).

15. Similar to the standard for approval of transactions under section 363(b)(1), the standard applied to determine whether the rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard. See, *Orion Pictures Corp, v. Showtime Networks Inc., (In re Orion Pictures Corp.)*, 4 F,3d 1095, 1098-99(2d Cir, 1994); In re Gucci,

193 B.R. 411 (S.D.N.Y. 1996); *In re Federated Dep't Stores Inc.*, 131 B.R. 808, 811 (Bankr. S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases.").

16.  The rejection of an executory contract or unexpired lease is appropriate where rejection of the contract would benefit the estate. *In re Sharon Steel Corp. v, National Fuel Gas Distribution Corp. (in re Sharon Steel Corp.)*, 873 F,2d 36, 40 (3d Cir. 1989). The standard for rejection is satisfied when the debtor has made a business determination that rejection will benefit the estate. See, *Commercial Fin. Limited v. Hawaii Dimensions Inc (In re Hawaii Dimensions Inc.)*, 47 B.R, 425, 427 (Bankr. D, Haw. 1985) (". . . under the business judgment test, the court should approve the debtor's proposed rejection if such rejection will benefit the estate.")

17.  If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an executory contract or unexpired lease. *See, e.g.*, *NLRB v. Bildesco & Bildesco*, 462 U.S. at 523 (1984), *In re Bradlees' Stores Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996).

18.  In applying the business judgment standard, courts show great deference to a debtor's decision to reject. *See NLRB*, 462 U.S. at 523 (1984), *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course.")

19.  The Debtor believes it is in the best interests of its estate to reject the Contracts. In the first instance, the Debtor submits that its decision to reject the Ground Lease satisfies the business judgment standard.  Prior to the Petition Date, the Debtor was engaged in significant litigation regarding access to the parking lot provided for under the Ground Lease.  At this point

in time, it is unclear whether the Debtor will have access to the parking lot that justifies the payment of the ground rent of $690,000 per year plus real estate taxes and insurance costs to maintain access to the parking lot on the Parking Parcel.[3] The Ground Lease was originally entered into as the Property's previous zoning requirements required that the Property have access to 1,500 parking spots although the lease only really provided 1000+ spaces. However, the Debtor has consulted with its advisors and has concluded that current zoning regulations no longer require such coverage, as a matter of fact, they no longer require any parking. This might have a significant impact on Debtor future rental efforts, by eliminating that requirement. Moreover, at the Property's current occupancy, and conditions due to Covid, the Debtor only requires no more than approximately 100 spots, which the Debtor can obtain through an alternative arrangement it made with Atlantic at a cost of estimated to be less than $20,000 a month, or $240,000 a year. A copy of a letter memorializing this arrangement is annexed hereto as Exhibit "D".

20. In the short run, given the Debtor's current needs, both from a zoning perspective and a business perspective, the Debtor currently does not require the number of parking spots that would be provided under the Ground Lease. The Debtor will save significant monies by the rejection of the Contracts, and this will allow it to refocus and reshape its rental plans. The effect of the rejection will be cash positive for the Debtor. New tenant leases will not have to provide any accommodations for parking thus freeing the Debtor from having to negotiate with prospective tenants with respect thereto.

21. Accordingly, the Debtor believes that rejecting the Ground Lease is in the best

---

[3] Debtor's total annual costs under the Ground Lease were $690,000 for the ground rent, $105,000 for real estate taxes, $110,000 for management fees/repairs and another $10,000 to $40,000 for landscaping/snow removal depending on conditions on the ground for a total of no less than $915,000. The income Debtor received from the use of the Parking Parcel has been fluctuating but in 2020 was only $323,000 thus leaving the Debtor with a deficit of around $500,000 per year.

interests of its estate. The Debtor has been able to arrange for sufficient parking for its existing needs at almost a third of the cost of the Ground Lease. This parking arrangement will provide the Debtor's tenants with the necessary parking as required under their leases with no interruption. Accordingly based on the significant savings in the new arrangement, coupled with accommodations the Debtor is making with its tenant and current zoning requirements, the Debtor submits that the rejection of the Ground Lease is in the best interests of the Debtor's estate. The savings from the rejection can be used towards funding a plan of reorganization as well as improving the Debtor's business upon an exit from chapter 11.

22.   As the Debtor is seeking the rejection of the Ground Lease, the Debtor submits that the rejection of other ancillary agreements is appropriate as well. The Parking Agreement with Atlantic is for the management under the Ground Lease of the parking lot that was on the Parking Parcel. Atlantic manages Garage A (and Garage B where some of the substitute parking was provided for) pursuant to management agreements with the owners of those facilities. The new arrangement ensures income to the owners of Garage A and therefore income to Atlantic, thus they are not prejudiced by this rejection. The Student Parking Agreement was for the sublease for a portion of space under the Ground Lease (space encompassing 167 spaces even though presently they were using around 50), that neither Debtor nor the contract partner have access to anymore since the Debtor has been moved off the Parking Parcel. Section 3(b) of the Student Parking Agreement provides that it is "expressly made subject to and subordinate to all of the terms, covenants and conditions of the Prime Lease…", ergo making the rejection of this agreement necessary and appropriate. Although the Debtor will lose the income it usually made from this agreement (approx. $5,670/month), the net effect of its rejection in conjunction with the rejection of the Ground Lease should see the Debtor reduce its monthly expenses by between a $30,000 to $40,000.

23. Accordingly, the Debtor submits that the decision to seek the rejection of the Contracts, all of which represent a bundle of agreements that flow from the Ground Lease in particular, is in the Debtor's opinion a proper exercise of its business judgement. Substitute parking for its current tenant body has been found at a fraction of the present cost, accommodations have been reached with certain of the tenants and current zoning doesn't require the same level of parking. Moreover, the Debtor also submits that the rejection of the Ground Lease will not adversely affect its claims regarding the Parking Parcel.

**NOTICE**

24. The Debtor has served this Motion, by first-class mail, upon the non-Debtor parties to the Contracts, the Debtor's twenty largest unsecured creditors, the Debtor's secured creditors, counsel to Dewey, counsel to the non-Debtor parties to the Contracts if known, parties that have filed Notices of Appearances, and the United States Trustee. Debtor submits that such notice is in accordance with the rules of this Court and appropriate.

25. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

**WHEREFORE**, the Debtor seeks the entry of an order authorizing the Debtor to reject the Contracts and grant such other and further relief as is just and appropriate.

**Dated:**  New York, New York
September 14, 2021

**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
**Attorneys for Debtor**
875 Third Avenue
New York, New York 10002
212-603-6300

By:  /s/ Robert M. Sasloff
**Robert M. Sasloff**